FILED

2010 Mar-26  AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ALICE LACEY o/b/o T.N.L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   6:08-CV-02328-LSC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Alice Lacey, on behalf of her minor child, T.N.L. ("Claimant"), appeals the decision of the Administrative Law Judge ("ALJ") denying her application for Child's Supplemental Security Income ("SSI"). Ms. Lacey has timely pursued and exhausted her administrative remedies, and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Claimant was eight years old at the time of the ALJ's decision.  (Tr. at 15.)  Plaintiff believes that her daughter became disabled on August 17,

2005, due to attention deficit hyperactive disorder ("ADHD").  (*Id*. at 59, 95.)

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process.  *See* 20 C.F.R. § 416.924(a).  The first step requires a determination of whether the child is "doing substantial gainful activity."  *Id*.  If she is, then the child is not disabled and the evaluation stops.  *Id*.  If the child is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether she suffers from a severe impairment or combination of impairments.  *Id*.  An impairment is considered "severe" if it causes more than minimal functional limitations.  *Id*. § 416.924(c).  If the impairments are not severe, the analysis stops.  *Id*. § 416.924(a).  However, if the impairments are "severe," the third step requires the ALJ to determine if one or more of the impairments meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404.  *Id*.  If the child has such an impairment and it meets the durational requirement, the ALJ will find that she is disabled.  *Id*.  If each of the criteria enumerated in the listings is not met, the ALJ must decide whether the impairment or combination of impairments "functionally

equals" the severity of any listed impairment.  *See Id*. § 416.924(d).

When assessing a child's functional limitations, the ALJ considers all of the relevant factors, such as:  how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health.  *Id*. § 416.926a.  To determine functional equivalence, the ALJ must evaluate the child's limitations in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for herself; and (6) health and physical well-being.  *See Id*. § 416.926a(b)(1)(i-vi).  An impairment, or combination of impairments, functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain.[1]  *See Id*. § 416.926a(a).

---

[1]For purposes of deciding the overall limitation in the six functional domains, a "marked" limitation is one that "seriously" interferes with functioning, and an "extreme" limitation is one that "very seriously" interferes with functioning.  *See* 20 C.F.R. § 416.926a(e)(2) and (3).

Applying this sequential evaluation, the ALJ found that Claimant has not engaged in substantial gainful activity at any time relevant to the decision.  (Tr. at 15.)  Based on the evidence presented, the ALJ concluded that her ADHD and nocturnal bedwetting are considered "severe" according to 20 C.F.R. § 416.924(c).  *Id*.  Nonetheless, the ALJ determined that these impairments, when considered singularly or in combination, did not medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.)  In evaluating functional equivalence, the ALJ found that Claimant does not have an impairment that meets or medically equals the listings in 20 CFR 416.924(d) and 416.926(a).  (*Id*.)  In the domains of acquiring and using information, attending and completing tasks,  interacting and relating with others, moving about and manipulating objects, and caring for yourself, the ALJ found Claimant has "less than marked limitation."  (*Id*. at 18-20.)  In the area of health and physical well-being, the ALJ found Claimant has "no limitation." (*Id*. at 20.)  The ALJ concluded by finding that "Claimant has not been disabled, as defined by the Social Security Act, since February 26, 2007, the date the application was filed . . . ."  (*Id*.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's

decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "[d]espite this deferential standard, it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff alleges that the ALJ's decision should be reversed or remanded because (1) the ALJ improperly rejected the September 2006 opinion of a treating physician, Dr. John Kerr; (2) the ALJ failed to give due weight to the opinions of two of Claimant's teachers; and (3) the ALJ failed to sufficiently develop the record.  (Doc. 8.)

A.   Treating Physician.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal

quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

In a child development and functioning questionnaire and ADHD form signed on September 11, 2006, Dr. Kerr indicated that Claimant had "no" limitations in health and physical well being and limitation in moving about and manipulating objects; and "marked" limitations in acquiring and using information, attending and completing tasks, and interacting and relating

to others.  (Tr. at 227-28.)  Dr. Kerr noted his answers were derived from "asking her questions," and he was "still in the process of optimizing her treatment."  (*Id*. at 228.)  Dr. Kerr also wrote on the ADHD form: "All this is better while [] on Concerta."  (*Id*. at 229.)  The ALJ gave "little weight" to the September 2006 assessment, because he found that it indicated Claimant's status without her medication.  Substantial evidence supports the ALJ's decision.

The evidence in the record shows that Dr. Kerr prescribed Concerta for Claimant on January 17, 2006, and indicated that Claimant needed to return to the clinic in a month.  (*Id*. at 140-42.)  Dr. Kerr also noted that Claimant had no barriers to learning, did not have a poor attention span, and was not irritable or fussy.  (*Id*. at 141.)  Claimant did not return to Dr. Kerr's office until February 2007, over one year later.  (*Id*. at 394.)  Accordingly, the only true opinion Dr. Kerr could give in September 2006 was what he saw during the exam earlier in the year, before Claimant began using Concerta.  He confirms that his opinion is based on the pre-Concerta observations when he writes, "All this is better while [] on Concerta."

The effectiveness of medication must be considered in the evaluation

of a child's functioning.   20 C.F.R. § 416.929(c)(3)(iv); *see also id*. §

416.924a(b)(9)(i).   At the February 2007 exam, Dr. Kerr indicated that

Claimant's mother said the Concerta was "doing pretty good." (Tr. at 394.)

Claimant's mother reported that her daughter "still has a good bit of

energy, but [the child] says that the teachers aren't having to fuss at her at

school and she stays in her seat good and she is able to handle her lessons

well." (*Id*. at 394.)  Dr. Kerr again noted that Claimant had no barriers to

learning, did not have a poor attention span, and was not irritable or fussy.

(*Id*. at 395-96.)  He also indicated Claimant was not hyperactive and "seems

in good control of herself." (*Id*.)  Accordingly, substantial evidence supports

the ALJ's decision to give greater weight to Dr. Kerr's observations in

February 2007, and give little weight to Dr. Kerr's September 2006 opinions

as indicating Claimant's condition without medication.

     B.    Teachers.

     Plaintiff argues that the ALJ failed to give proper weight to the

opinions of two of Claimant's teachers: Rebecca Blalock and Lana Cooper.

Blalock filled out a teacher questionnaire in May 2006, which rated Claimant

as having an "obvious" or "serious" problem in a number of educational and

social activities. (Tr. at 84-91.) In August 2006, Blalock completed a child development and functioning questionnaire and ADHD form, indicating that Claimant had a "less than marked" limitation in health and physical well being and caring for self, and "marked" to "extreme" limitations in all other areas. (*Id*. at 109-11.) Blalock wrote: "[Claimant] has a great deal of trouble attending to tasks and staying on task." (*Id*. at 110.) Lana Cooper completed the same forms in November 2007 and concluded Claimant had "no" limitation in health and physical well being, moving about and manipulating objects, and caring for self; "less than marked" limitation interacting and relating to others; and "marked" limitation attending and completing tasks and acquiring and using information. Cooper indicated Claimant had "marked" limitations in all areas on the ADHD form. (Tr. at 121-23.) The ALJ rejected both opinions as reflecting Claimant's status without proper medication.

In determining whether a child is disabled, an ALJ considers all relevant information, including non-medical sources, such as parents and teachers. 20 C.F.R. § 416.924a(a); *see also id*. § 416.913(d). Plaintiff testified at the December 11, 2007, hearing before the ALJ that she took

Claimant off her medications in the summer to see how she would do without medication. (Tr. at 39.) Plaintiff also testified that Claimant had just recently seen another doctor, Carla Grace, at Hamilton Medical Clinic, who started her back on medication. (*Id*. at 29-30, 39.) However, Hamilton Medical Center indicated that Claimant had not been treated since February 2007. (*Id*. at 399-401.) Given this evidence, there is substantial support for the ALJ's finding that Cooper's opinion, made just four weeks prior, was representative of Claimant's status without proper medication.

School records also show that in April 2006, Claimant was not receiving her medication consistently and a teacher requested that it be administered by a school nurse. (*Id*. at 169.) There is no indication of any follow-through with that request. In her August 2006 evaluation, Blalock stated that she did not know if Claimant was receiving her medication regularly. (*Id*. at 90.) In fact, she lists Statera as the medication prescribed for the claimant. (*Id*.) Dr. Kerr switched Claimant from Statera to Concerta in January 2006. Most importantly, however, Blalock writes that the claimant's functioning changes after taking medication—specifically, "some days she can settle down and work quicker than other days." (*Id*.) Given this evidence and

other evidence in the record of frequent non-compliance, the Court can find no error in the ALJ disregarding the May 2006 opinion and Blalock's functional ratings in August 2006, when it was unknown whether Claimant was properly medicated.   The ALJ gave greater weight to Blalock's statement that Claimant functioned better after taking medication.

C.     Developing the Record.

Finally, at the conclusion of her memorandum of law, Plaintiff infers that the ALJ failed to fully develop the record and could have ordered a mental status exam.  (Doc. 8 at 11-12.)  Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971).  The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all relevant information.   *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981).  The ALJ's duty includes ordering a consultative examination "when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).  In any case, there must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v.*

*Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at

413).  Plaintiff never asked the ALJ for a consultative examination, and the

ALJ never indicated that he needed additional evidence to make an

informed decision.  Plaintiff has also failed to establish prejudice; therefore,

remand for further development of the record is inappropriate.

IV.    Conclusion.

Upon close review of the administrative record, and considering all of

Plaintiff's arguments, the Court finds that the ALJ's decision applies proper

legal standards and is supported by substantial evidence.  The decision of

the Commissioner of the Social Security Administration will be affirmed by

separate order.

Done this 26th day of March 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297